### *In re* Astor's Estate.

(*Surrogate's Court, New York County.* June 13, 1888.)

1. Descent and Distribution—Legacy Taxes—Appraiser's Report.

Under Laws N. Y. 1887, c. 713, imposing a tax on certain legacies, etc., and providing in section 13 that, "in order to fix the value of the property subject to the

payment of the tax," the surrogate shall appoint an appraiser, who shall ascertain the fair market value of the property, and report thereon, it is the appraiser's duty to report all the property liable to tax; and it is improper for his report to contain also a statement of the exempt property.

2. SAME—PROPERTY TO BE APPRAISED.

An appraiser's report, showing that he had appraised " all the property of the deceased made known to him by the executor," is insufficient, as he should appraise all the property liable to the tax, regardless of the source of his information.

3. SAME—VALUATION OF PROPERTY.

The report should also show that the property was appraised at " its fair market value," in accordance with the provisions of the act.

4. SAME—REFERENCE TO BRIEFS OF COUNSEL.

In ascertaining the property so liable, it is improper for the appraiser to rely on the briefs of counsel for the facts to sustain his findings.

5. SAME—NOTICE OF APPRAISAL.

The appraiser should mail notices to all persons known to him as having an interest in the property, and a report showing that only the persons whose names appear in the order of appointment were notified is insufficient.

On motion to confirm appraiser's report.

This was a proceeding to appraise the property of Charlotte Astor, deceased, liable to the payment of the "collateral inheritance tax" imposed by Laws N. Y. 1887, c. 713.

*Evarts, Choate & Beaman,* for the motion.     *Bangs, Stetson, Tracy & McVeagh, contra.*

RANSOM, Sur.- I have heretofore expressed my views of the construction to be given to the collateral inheritance tax act in respect to the various steps to be taken in ascertaining the property liable to the tax, and the appraisal of the same.     *Estate of Astor,* 7 Sur. Dec. 161.     I have not had reason to change or modify that decision, nor has it been questioned or adversely criticised by any appellate tribunal.     Under that decision, we have proceeded with considerable confidence in the correctness of our practice. Appraisers have been appointed upon the assumption that the orders of their appointment were in exact compliance with it.     In the main these orders were, no doubt, exact; but, as the cases have not been contested, my attention has not been specially attracted to the form of each order, nor to the appraisers' reports made in pursuance thereof.     As the present proceeding is the one in which I first considered with some care the act, my interest in the report of the appraiser, under the order for his appointment herein, has kept me mindful of my determination to carefully review it when presented for confirmation; and although the report was submitted after notice  y me to all persons interested, without objection, and might, in the ordinary course of business, have been confirmed without special examination, relying, as I should have been justified in doing, upon the comptroller for any valid objections thereto, I have given it careful examination, and, without meaning to overrule any conclusion reached by the appraiser, I must decline to confirm his report in its present form.     I do not intend to express any opinion upon the question of exemption of the legacies from the tax.     That question is not properly before me under this report, nor could it be in any case, except on objection by a legatee whose interest in the estate had been held liable to the tax by the appraiser.

The appraiser should report any property, estate, or interest therein "subject to the tax."     This duty is plainly devolved upon him by section 13 of the act, in these words, viz.: "In order to fix the value of property  *  *  * subject to the payment of said tax, the surrogate  *  *  * shall appoint some competent person appraiser," etc.     The appraiser is not appointed to fix the value of property which is not subject to the payment of the tax.     In the case under consideration he has devoted much of his time and labor to the question of what property is exempt therefrom.     It is true that, in order to ascertain what property is subject to the tax, and its fair market value,

he necessarily ascertains that certain other property is not subject to it; that is, exempt. But his duty, as I conceive it to be, is not to report such exemptions. If, in the view of any person interested, the appraiser has not reported all property subject to the tax, such person could and should raise the question on the coming in of his report; and, if in the right, the report should be sent back, with instructions to appraise the fair market value of such property. In this proceeding the appraiser was justified by the order of his appointment in reporting certain legacies as exempt from the tax. That provision of the order escaped my observation when it was signed. Such provision was improper; but as the order was, in all essential particulars, right, it may be disregarded. The appraiser's report, when confirmed, is in the nature of a decree imposing a tax upon certain described property; and, so far as the state of New York is concerned, at least, must be final in respect of any future claim for this tax upon all property then in existence and known to the appraiser,—always, of course, assuming that he acted in good faith, and without concealment or fraud on the part of the persons interested in such property. If the appraiser should be in doubt as to the liability of any property to the tax, he should report it subject thereto; and in that case any person dissatisfied has ample protection provided for by section 13 of the act, by appeal to the surrogate, in the event that the appraiser is sustained on the coming in of his report, by giving security for the tax, and further protection by appeal from the decree of the surrogate, by the usual steps, to the court of last resort. So far as the state is concerned, the legislature intended, I think, that the surrogate, aided by the appraiser, shall be the ultimate power. Therefore exemptions from the tax should not be adjudged, except upon facts to be ascertained by the surrogate according to usual methods in a court of justice. The appraiser has no right to take testimony under oath, and, except in the plainest case, he ought to hold all property passing by the will of a resident, or by the intestate laws of this state, subject to the tax. It is easy to imagine a case where the claim of a person interested, that his property is not subject to the tax, can only be disposed of in justice to him and to the state by the examination of witnesses, by the laying in evidence of documents, etc. In such a case I am of opinion that the surrogate has the power, under the act,—and, if so, then such would be his duty,—to require legal proof of all the facts *pro* and *con*.

In the present case the appraiser has found certain legacies exempt from the tax, and no doubt he has so found upon evidence which to his mind is satisfactory and conclusive; but he has not reported those facts to me, nor, indeed, could he do so, under this law, in such form as to be obligatory upon me, or in the least satisfactory, because he has no right to examine witnesses under oath. In this case the appraiser refers to briefs of counsel to sustain his findings. I need not, I am sure, spend any time in showing the impropriety of such reference. The great eminence of counsel, and the supreme confidence of the appraiser and myself in their learning, do not authorize me to pass a decree depending upon their briefs to sustain its recitals. The appraiser should have relied upon facts, and stated them, and upon adjudicated cases and text books, and cited them. However, this does not so much matter; because I hold that his report must be amended by striking out all that portion of it which exempts legacies named, and should mention only such property as he finds subject to the tax, and all of such property, and to so expressly report. As I have attempted to show on the confirmation by the surrogate of his report, proceedings to collect this tax on property then in existence are at an end, and all property not then held subject to the tax may be distributed free of any further claim by the state. In some other respects the report of the appraiser should be amended; and, to save all question of his authority, an order reappointing him should be handed up.

First, the appraiser reports that he has appraised the property, both real

and personal, of the deceased, "made known to him by the executor of the will." This is erroneous. The appraiser should appraise the property sub-.ject to the payment of said tax, and the source of his information need not necessarily be stated. At all events, he should unequivocally report that he has appraised all property subject to the payment of the tax. It may be that an executor, by inadvertence, forgetfulness, or fraud, may fail to disclose all property of the deceased subject to the tax. The appraiser is not precluded by such information, nor has he properly performed his duty if he seeks for no property beyond that which is disclosed by the executor; and his report should be that he has appraised all property subject to the tax, giving the name of the owner or person having an interest therein; and if, in his judg-ment, his means of ascertaining the extent of such property may be pertinent and material for the information of the surrogate, he should state them. He cannot assume, however, that information from the executor—or from any other person, for that matter—is conclusive.

The appraiser in this case has also stopped a little short of his duty under the act, in respect of notices by mail to persons known to have or claim an interest in such property. He reports that he has given notice by mail, post-.age prepaid, of the time and place of said appraisal, to each of the persons to whom the surrogate did by said order direct. It may be that these persons are all who have any claim or interest in such property, but the appraiser has .an independent duty to perform, under my construction of the act heretofore .given in this matter. I deem it the duty of the surrogate to ascertain the names of persons known to have or claim an interest in such property at the time of appointing the appraiser, and that such names shall be given in the order, and to them the appraiser must give notice. He is not, however, re-lieved by such order from inquiry for any other person or persons known to have or claim an interest in such property; and he should not only report service upon persons named by the surrogate, but the additional fact that they are or are not all the persons known to him (the appraiser) to have or claim .an interest in such property. The appraiser reports, "I have appraised the property of said Charlotte Augusta Astor, deceased, as follows." This is not in accordance with the requirements of the act. It provides that he shall ap-praise such property at "its fair market value." He has omitted to state that he has thus appraised it.

The petition for the appointment of appraisers in testate cases may be as follows:

[Title.]

"*To* —— *Surrogate:* The petition of —— respectfully shows: *First.* Your petitioner is ——, and as such is a person interested in the estate of the above-named decedent. *Second.* That the said decedent departed this life on the —— day of ——, in ——, and that —he was a resident of this .state. *Third.* That said decedent left a last will and testament, which was .on the —— day of —— duly admitted to probate; and that —— are the executors of said will, and their post-office addresses are ——. *Fourth.* That, as your petitioner is informed and believes, the property of said dece-.dent, passing by said will, or some portion thereof, or some interest therein, is subject to the payment of the tax imposed by the law to tax gifts, legacies, and collateral inheritances in certain cases. *Fifth.* That all the persons who are interested in said estate, and who are entitled to notice of all proceedings herein, including the comptroller of the city of New York, and their post-of-fice addresses, are as follows, viz.: ——. Wherefore your petitioner prays that you will appoint some competent person as appraiser, as provided by law. And your petitioner will ever pray.

[Verification.]        " ——, Petitioner."

This form may be varied to suit intestate cases.

The order appointing the appraiser may be in the following form.

"[Caption.]

"*Estate of* ——— :　On reading and filing the petition of ———, praying for the appointment of some competent person as appraiser, under and in pursuance of the law to tax gifts, legacies, and collateral inheritances in certain cases, it is ordered that ———, Esq., be, and he hereby is, appointed such appraiser. It is further ordered that said appraiser shall give the notice required by said law, in the manner and at the time therein set forth, (and said notice shall be ——— days,) to the following persons, and to all other persons known to have or claim an interest in the property of ———, the decedent named in the above-entitled proceeding, subject to the payment of said tax, viz.: [Here take in names of persons to be served with notices.]"

The form of the appraiser's report may be as follows:

"[Title of Proceeding.]

"*To* ———, *Surrogate:*　I, the undersigned, who was on the ——— day of ——— appointed appraiser, under and in pursuance of the law to tax gifts, legacies, and collateral inheritances in certain cases, a certified copy of which order is hereto attached, respectfully report: *First.* That forthwith after my said appointment I gave notice by mail, postage prepaid, to all persons known to have or claim an interest in all property subject to the tax imposed by said law, and to the following named persons, being those named by the surrogate in the said order, of the time and place I would appraise the property of ———, deceased, subject to the payment of said tax. A true copy of said notice is also hereto attached. [Here take in names.] *Second.* I further report that at the time and place in said notice stated, to-wit, on the ——— day of ———, at ———, I appraised all the property of said ———, deceased, subject to the payment of said tax, at its fair market value, as follows, to-wit: [Give minute description of the property appraised, name of owner or person interested therein, and his post-office address, and the fair market value of such property.] All of which is respectfully submitted. ———, Appraiser."

The appraiser, before entering upon his duties, should take the oath of office required by general law, to the effect that he will faithfully and fairly perform the duties of such appraiser, and make a just and true report, according to the best of his understanding. This oath of office should also be attached to his report. The surrogate, on the coming in of the appraiser's report, should, if he confirms it, make an order to that effect, and he must forthwith assess and fix the then cash value of said property, subject to the payment of said tax. His order may be in the following form:

"[Caption.]

"[Title of proceeding.]　On reading and filing the report of ———, the appraiser herein, and after hearing ——— in support of said report, and ——— in opposition thereto, ordered—*First.* The said report is in all respects confirmed. *Second.* The cash value at this date of the property mentioned and described in said report, which is subject to the payment of the tax imposed by law taxing gifts, legacies, and collateral inheritances, is as follows: ———. *Third.* That the tax to which the said property is liable is as follows, viz.: ———. ———, Surrogate."